[No. 831-2. Division Two. October 16, 1973.]

AMELIA BOMBARDI et al., *Respondents,* v. POCHEL'S APPLIANCE AND TV COMPANY, *Defendant,* ADMIRAL CORPORATION, *Appellant.*

*James M. Beecher* (of *Wolfe, Hackett, Beecher & Hart*), for appellant.

*Albert R. Malanca* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for respondents.

ARMSTRONG, J.—This is an appeal from a judgment entered in favor of plaintiff, Mrs. Bombardi, for damages to her rental property, and in favor of plaintiffs Messina for personal injuries and property loss, all of which were sustained as a result of a fire occurring in a duplex owned by Mrs. Bombardi and being occupied by her niece, Julia Messina and her husband, Tony Messina.

It was the contention of plaintiffs at trial that the cause of the fire and of the consequent damage to plaintiffs was a defect in a television set manufactured by defendant Admiral Corporation and sold to plaintiff, Mrs. Bombardi, as a "used" model by Pochel's Appliance and TV Company. The television set was completely consumed in the fire.

Although there are other contentions to be discussed, the primary issue raised by this appeal is whether there was substantial evidence to prove that the used television set, completely consumed in the fire, was in a defective condition when it left the hands of the manufacturer, and that the defective condition was the proximate cause of the damage to plaintiffs. We hold there was substantial evidence to support both challenged requirements necessary to establish strict liability.

Admiral assigns as error the failure of the trial court to grant defendants' challenge to the sufficiency of plaintiffs' evidence, and failure to grant defendants' motion for judgment non obstante veredicto, or for a new trial. Such motions admit the truth of the opponent's evidence and all inferences which can reasonably be drawn therefrom; require that the evidence be interpreted most strongly against the moving party and in a light most favorable to the nonmoving party; and can be granted only when the court can say, as a matter of law, that there is no substantial evidence to support the nonmoving party's claim. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963).

A review of the record with these principles in mind discloses that in May of 1966, defendant Admiral manufactured a color television set, model LK 5311, which was sold by Pochel's Appliance and TV Company. In January of 1970, Pochel again sold this same set to plaintiff, Mrs. Bombardi, as a "used" set which had been taken back as a trade-in. Mrs. Bombardi placed the set in a corner of the front room of her rental duplex, which was being occupied by the Messinas. On March 23, 1970, a fire occurred in the duplex, causing property damage to the duplex and its contents and personal injury to the Messinas.

The local fire chief testified that he was able to "pinpoint" the northeast corner of the apartment as the area where the fire originated. In this corner there were two items that aroused his suspicion, an electric baseboard heater and the television set, and as a result he called in the state fire marshal to get his opinion as to the cause of the fire. The state fire marshal and two other expert witnesses called by the plaintiffs all agreed that in their opinion the television set was the cause of the fire.

Turning now to the law governing this case, we note that in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969), the court adopted the rule of strict liability set forth in the Restatement (Second) of Torts § 402 A, at 347 (1965). The rule as set forth in that section provides as follows:

Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

 In addition to giving an instruction based upon the Restatement rule, the court gave an instruction substantially in the terms recommended by the concurring opinion in *Ulmer*. That instruction provided, in substance, that the plaintiff had the burden of proving (1) that there was a defect in the television set, (2) that the defect existed at the time the product left the manufacturer, (3) that the defect was not known to the user, (4) that the defect rendered the product unreasonably dangerous, and (5) that such defect was the proximate cause of plaintiff's injury. We believe the two instructions to be clear and correct statements of the law of strict liability in this state.

In this case recovery was sought against the manufacturer, rather than the immediate seller. As we have pointed out, in such an instance the burden of proof is upon the plaintiff to prove that the product was in a defective condition when it left the manufacturer. *Curtiss v. Young Men's Christian Ass'n,* 82 Wn.2d 455, 511 P.2d 991 (1973); Restatement (Second) of Torts § 402 A, comment *g* at 351 (1965).

In attempting to show that the television set was in a defective condition when it left the hands of the manufacturer, Admiral Corporation, it was virtually impossible for the plaintiffs to produce *direct* evidence as to the exact nature of a manufacturing defect in the set that caused the fire, or of a particular part that malfunctioned, since the television was destroyed beyond any testing or examination. The set was described after the fire by various witnesses as "one melted mess," "totally disintegrated," "just a glob," and as a "melted mass of steel." However, the fact that plaintiff is unable to point an accusing finger at a particular defective component does not preclude him from establishing that a product was defective where, as in this

case, the exact nature of the alleged defect is that it is one causing the product to totally consume itself in fire.

Generally, direct evidence of an identifiable defect will be the plaintiff's strongest evidence of a product's defectiveness, as for example chemical analysis indicating that diesel oil was contaminated by 7 percent gasoline,[1] or expert testimony that a defectively installed "A-frame" pivot bolt had come loose, rendering it impossible to control an automobile.[2] On the other hand, we have previously held that proof of the defective condition of a product may be by direct or circumstantial evidence, and that a verdict does not rest on speculation or conjecture when founded on reasonable inferences drawn from circumstantial facts. *Tokarz v. Ford Motor Co.*, 8 Wn. App. 645, 654, 508 P.2d 1370 (1973); *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 356, 493 P.2d 1018 (1972).

Here the record reveals that the subject television was sold as a new set and serviced throughout its first ownership by Pochel's Appliance and TV Company, an authorized Admiral dealer. The set was serviced some seven or eight times after the original sale on February 15, 1967, and testimony was received to the effect that this was not an unusually large number of service calls for a set of its age. The service was performed by technicians required to attend service training schools conducted by Admiral, and who had available to them a service manual distributed by Admiral showing the chassis, the circuitry, and all of the component parts of their sets. The servicing included a reset and replacement of the circuit breaker, the installation of a new on-off volume control switch, and a voltage regulator because the area in which the original owner lived had a utility system which was often subject to power surges. The voltage regulator was manufactured by Admiral to take care of this particular problem. In servicing the set, only Admiral parts were used, with the possible

[1] *Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972).

[2] *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969).

exception of some tubes. The set was traded back to the Pochel organization by the original owner and checked out according to a routine shop procedure prior to its sale to Mrs. Bombardi in January of 1970. We set forth the following testimony, which was received without objection, concerning the condition of the set at the time of its sale as a used model to Mrs. Bombardi:

Q Now, Mr. Purtell, at the time this set was placed for sale to Mrs. Bombardi, having sold the set new from Admiral, having serviced it throughout its existence prior to going to Mrs. Bombardi, having been checked out by your shop, do you have an opinion as to the condition of this set in comparison in considering all the component parts and so on in comparison to when it was first sold fresh out of the factory except for the length of time it has been in use, do you have such an opinion?

A The only, the opinion that I would have, we did service it from the inception of going to the first customer, that other than what we have here and I would assume other than the tubes, everything in it were the original type manufacturers.

Q All right. Would you say then that the set that you sold to Mrs. Bombardi was in the same condition as Admiral manufactured it except for the length of time it had been used by the Sanfords?

A Yes.

No error is assigned to the testimony of plaintiffs' expert witness, Mr. Rasmussen, who, after reviewing a schematic of the model No. LK 5311 set involved in the fire, and assuming that the set was turned off but that the cord running from the set was plugged into the wall, testified that the following component parts could have malfunctioned, causing a fire: (1) the set had a single function push-pull, on-off switch, and that particular type of switch could malfunction, causing an arc across the back of the switch which would weld the contacts together, in turn causing a continuous operation and flow of current, even though the set may have temporarily gone off; (2) Admiral sets in 1966 and 1967 had a fiberboard backing—a woodlike

material which would ignite from too much heat; (3) Admiral in 1966 and 1967 used a high voltage transformer that had a wax coating and after a period of time the transformer would deteriorate and could catch aflame, whereas a transformer with a silicon rubber base is much safer; (4) on prior occasions the circuit breaker had needed to be reset, then replaced, and if a short circuit occurred and the circuit breaker did not function, this could cause a fire; (5) since 1966 and 1967 some manufacturers had changed their fusing to a protective double fuse safety system so that if a short occurred in the set the power would terminate before it entered the set, rather than to rely upon the house fuse to function, since these are of a greater size than those used in TV sets; (6) the condenser could blow apart, causing an arc and charring; and (7) the horizontal output transformer could have malfunctioned, causing a fire.

We found liability in *Lamphiear v. Skagit Corp., supra,* where there were sufficient facts from which the jury could reasonably and logically infer that an accident occurred either of two ways. Either theory was plausible, and both were supported by sufficient circumstantial evidence from which reasonable minds could conclude there was a greater probability the accident occurred through a defect for which the defendant would be liable than that it occurred in a way for which the defendant would not be liable.

Although *Kuster v. Gould Nat'l Batteries, Inc.,* 71 Wn.2d 474, 429 P.2d 220 (1967), was decided before the landmark decision of *Ulmer v. Ford Motor Co., supra,* there are similarities that make that opinion of interest to our consideration of this case. In *Kuster,* as in this case, the record did not disclose any probable cause other than that testified to by plaintiff's experts. Admiral failed to produce any evidence indicating improper handling, use, or servicing, or any substantial evidence whatsoever indicating that a cause of the fire was some conduct, event, or condition for which the manufacturer was not responsible. In the *Kuster* case, the court held that the plaintiff was required to establish that a manufacturing defect was a cause of the accident,

and if the evidence showed that the injury was equally attributable to other probable causes, the plaintiff must exclude such causes. However, the court went on to conclude that in so doing he is not compelled to meet conjecture or mere possibilities with proof to the contrary.

After reviewing the record, we are satisfied that there was sufficient evidence to indicate that the used set purchased by Mrs. Bombardi was in essentially the same condition as when it was originally manufactured, and that the television was manufactured with various defective components which rendered the set "fire-prone." The evidence is virtually undisputed that a fire did in fact originate in this television, causing damage to the plaintiffs. Although the television set was completely consumed in the fire, we find there was substantial evidence from which a jury could reasonably conclude that the set was in a defective condition when it left the hands of the manufacturer, Admiral Corporation, and that the defective television set was the proximate cause of the damage to plaintiffs.

██ ██ In concluding that the plaintiffs in this case have produced sufficient evidence to establish the liability of Admiral Corporation for their injuries and damage, despite plaintiffs' inability to identify with precision the exact one of several potentially defective and dangerous conditions which caused the fire, we here note that there are significant policy reasons for imposing strict liability. Restatement (Second) of Torts § 402 A, comment c at 349, 350 (1965) sets forth the justification for a rule imposing liability even though the seller may have exercised all possible care in the preparation and sale of his product:

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries

caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

In other words, the purpose of such liability is to ensure that the costs of injuries resulting from defective products are borne by the makers of the products who put them in the channels of trade, in this case Admiral Corporation, rather than by the injured persons who ordinarily are powerless to protect themselves. *See Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697 (1962); *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

Defendant Admiral Corporation assigns as error that the judgment of the trial court improperly included an award to plaintiff Mrs. Bombardi for commercial or economic loss based on the damages sustained to her rental property. However, Admiral has misperceived the nature of the damage award to Mrs. Bombardi.

The jury was specifically instructed that a verdict for plaintiff Bombardi should simply include the reasonable cost of repair to the structure owned by her which was damaged by the fire, and the fair cash market value as of the date of the fire of all personal property damaged or destroyed.

■ Strict liability in tort *does* apply to physical harm caused to the ultimate user or consumer, *or to his property.* Restatement (Second) of Torts § 402 A(1) (1965); *Ulmer v. Ford Motor Co., supra.* Mrs. Bombardi certainly falls within the purview of a "user or consumer," especially since she was the actual purchaser of the defective television set. The fact that the property damaged was rental property does not make the loss merely commercial or economic where the plaintiff does not allege indirect or consequential damage due to the failure of the product to match

his economic expectations. For example, commercial or economic loss refers to where the plaintiff seeks recovery for lost profits because he is unable to make normal use of a defective product. *Seely v. White Motor Co.*, 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17 (1965). Another example of commercial or economic loss is where plaintiff's only damage is that the product has less intrinsic value than it is supposed to have. *Santor v. A & M Karagheusian, Inc.*, *supra.* The award to Mrs. Bombardi was not for such commercial or economic loss.

Defendant next assigns as error the trial court's instruction to the jury that:

> Proof of a prolonged injury-free use of the product prior to the occurrence of the injury is not sufficient *itself* to establish that it was not defective in the manufacture or design.

(Italics ours.)

In *Ulmer v. Ford Motor Co.*, *supra,* the trial court instructed the jury that in determining whether a failure to exercise reasonable care on the part of the defendant was a proximate cause of an accident, it could consider the age of the car involved and the number of miles traveled. In that case there was a substantial conflict in the evidence as to whether these factors had any effect on the likelihood that there was a defect. Since the instruction contained an assumption as to a material fact in issue and tended to impress upon defendant's evidence the stamp of judicial approval, the court held that it was error to give the instruction. *Ashley v. Ensley,* 44 Wn.2d 74, 265 P.2d 829 (1954).

The trial court in this case concluded that the challenged instruction did not amount to a comment on the evidence and that any possible prejudicial effect was removed by insertion of the qualifying language *"itself"* within the body of the instruction, since the jury was clearly instructed that prolonged use could be considered, but that factor alone was not enough to establish that the product was not defective. We agree with the trial court. Furthermore, unlike the instructions involved in *Ulmer,*

this instruction did not assume any material facts in issue, did not tend to impress upon any party's evidence the stamp of judicial approval, and there is ample authority for the proposition of law on which the instruction was based. *Ulmer v. Ford Motor Co., supra* note 6; 78 A.L.R.2d 499 (1960).

■ Defendant contended that the trial court erred in denying a mistrial due to repeated references to a "government safety report" concerning televisions found to be fire hazards, since the report was not admitted into evidence. Defendant did not object to the references during voir dire and made several similar references himself. A cautionary instruction was offered but refused. The court's decision denying the motion for a mistrial was a matter of judicial discretion, and on the record in this case it cannot be said that the denial was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ Defendant argued that the trial court erred by ruling that Admiral could not argue to the jury anything about possible improper repairs because Pochel's Appliance and TV was an agent of Admiral. However, both plaintiff and defendant in their briefs misconstrued the court's proper ruling that Admiral would not be allowed to argue improper repair to the jury, not because of agency principles, but because there was absolutely no evidence in the record whatsoever of any such improper repair. A party's theory of the case must be supported by substantial evidence before it may be argued to the jury. *Larson v. Puyallup School Dist. 3,* 7 Wn. App. 736, 502 P.2d 1258 (1972); *Malkasian v. Irwin,* 61 Cal. 2d 738, 394 P.2d 822, 40 Cal. Rptr. 78 (1964).

The next contention of defendant was that recovery of plaintiff Tony Messina's income loss, due to missing 5 weeks from work because of his personal injuries, was improperly submitted to the jury. Defendant's argument was based on the fact that the amended complaint did not make any claim for lost earnings. We find no error here

since it is a well recognized principle that pleadings are deemed amended to conform to evidence admitted without objection. CR 15(b); *Krenov v. West Coast Life Ins. Co.*, 48 Wn.2d 180, 292 P.2d 209 (1956). Defendant did not object to the evidence in this case and there is nothing in the record to indicate that the trial court abused its discretion by allowing the wage loss claim to go to the jury.

We must point out that the instruction by which the question of Tony Messina's lost wages was submitted to the jury refers to "the reasonable value of *lost earning capacity*." (Italics ours.) All of the parties in this case appear to have missed the distinction between *lost earnings* and *impairment of earning capacity*, which involves permanent injury coupled with reduced ability to perform work. *Leak v. United States Rubber Co.*, 9 Wn. App. 98, 511 P.2d 88 (1973). Failure to make this distinction was not raised in the trial court, was not assigned as error nor argued in defendant's brief, and is therefore not considered by this court on appeal. CAROA 17, CAROA 43; *Felsman v. Kessler*, 2 Wn. App. 493, 468 P.2d 691 (1970). *Daggett v. Tiffany*, 2 Wn. App. 309, 467 P.2d 629 (1970).

■ Finally, defendant contends that reversible error was committed when counsel for plaintiff, in closing argument, suggested that the jurors could be in the same position as plaintiffs. Improper trial argument to which an aggrieved party fails to make a timely objection does not constitute reversible error unless the argument was so flagrant that no instruction could cure it. *State v. Brakes*, 1 Wn. App. 987, 465 P.2d 683 (1970). Since defendant did not object at trial and in context the argument was not flagrant or highly prejudicial, we find no reversible error.

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Modification upon petition or rehearing, *see* opinion 10 Wn. App. 243.