291 So.2d 169 (1974)
FORD MOTOR COMPANY
v.
Ethel MATTHEWS, Administratrix of Estate of Earnest Matthews, Deceased.
No. 47389.
Supreme Court of Mississippi.
February 11, 1974.
Rehearing Denied March 25, 1974.
*170 Watkins & Eager, Hassell H. Whitworth, Elizabeth W. Hulen, Jackson, for appellant.
Farese, Farese, Jones & Farese, Ashland, for appellee.
RODGERS, Presiding Justice.
This is a products liability suit in a wrongful death action. It was filed by the estate of Earnest Matthews in the Circuit Court of Benton County, Mississippi, against Ford Motor Company and Ray Brothers Tractor Company, Inc. During the trial, a settlement was reached between Ray Brothers and the plaintiff, leaving the Ford Motor Company as the sole defendant. The court, sitting without a jury, found for the plaintiff-administratrix and entered a judgment against Ford in the amount of seventy-four thousand two hundred seventy-two dollars and sixty-five *171 cents ($74,272.65). Ford Motor Company appeals to this Court and assigns the following errors:
(1) The findings of fact of the court below are not supported by any evidence of any probative value, or in the alternative, were contrary to the overwhelming weight of the evidence.
(2) The conclusions of law of the court were in conflict with the decisions of this Court.
(3) The court below erred in failing to find that under the undisputed evidence the negligence of Ray Brothers was the intervening sole proximate cause of the accident.
(4) The court below erred in finding defendant, Ford, liable under the strict products liability rule.
(5) The court erred in admitting hearsay evidence of statements of the deceased after the accident.
(6) The court erred in entering judgment for plaintiff-administratrix against defendant-appellant.
Earnest Matthews was killed as a result of being run over by his tractor and dragged underneath a disc attachment. It was alleged that Matthews was standing beside his tractor when he started it, and the tractor was in gear at the time. The Ford tractor in question was equipped with a starter safety switch which was designed to prevent the tractor from being started in gear. It is the position of the plaintiff-administratrix that the plunger connected with the safety switch was defective and allowed the tractor to be started in gear.
The tractor in question was sold to Ray Brothers by Ford in November of 1965. In April of 1966, Ford sent to all dealers a service bulletin advising of a possible defect in the safety switch system of tractors of the model sold to Earnest Matthews, outlining the necessary corrective measures. The testimony indicates that Ray Brothers never checked for nor attempted to remedy the defect. In November of 1967, the tractor was sold to J.W. Goolsby. The tractor was damaged in a fire in February, 1968. Ray Brothers purchased the salvage from Goolsby, and factory-trained mechanics rebuilt the tractor with genuine Ford parts. The mechanics stated that all damaged parts were replaced, including the starter safety switch, but the plunger was not damaged and was not replaced. The tractor was sold to Matthews in April, 1970. At no time did Ray Brothers attempt to repair the defective safety switch system as recommended by Ford. Furthermore, neither Ford nor Ray Brothers warned Matthews of the possible defect in the safety switch system, nor of the danger of starting the tractor while standing on the ground. On April 23, 1970, Matthews was killed by the tractor after it started in gear and ran over him, dragging the cutting disc over his body.
On the threshold of this study we are confronted with the issue as to whether or not the plaintiff sustained her burden of proof under the strict products liability rule adopted by this Court. This issue must be resolved by analyzing the requirements of the American Law Institute's Restatement (Second) of Torts § 402A (1965) [hereinafter cited as Rest. (2d) Torts § 402A], which this Court first adopted in State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). This section reads as follows:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and

*172 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
The essential elements in such a case are as follows:
"The chief elements which a plaintiff must prove in a case involving strict liability in tort are (1) the defective and unreasonably dangerous condition of defendant's product (including defendant's connection with the product), and (2) a causal connection between such condition and the plaintiff's injuries or damages." Hursh, American Law of Products Liability § 5A:4, at 347-348 (Supp. 1973).
Discussing these elements in order, it is first necessary to prove that the tractor in this case left the hands of Ford in a defective condition, which rendered it unreasonably dangerous. This issue was discussed in State Stove, supra, wherein the Court said: "Ordinarily the phrase `defective condition' means that the article has something wrong with it, that it did not function as expected." [189 So.2d at 121]. The Court further stated that: "It is a question of fact whether the particular article involved was reasonably safe when it left the control of the manufacturer." [189 So.2d at 121].
Prosser defines "defective" in this manner:
"The prevailing interpretation of `defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety. It has been said that this amounts to saying that if the seller knew of the condition he would be negligent in marketing the product." Prosser, Law of Torts § 99, at 659-660 (1971).
In discussing "defective condition", Rest. (2d) Torts § 402A, Comment (g), at 351 (1965) states:
"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."
Rest. (2d) Torts § 402A, Comment (i), at 352 (1965) discusses "unreasonably dangerous" in these terms:
"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."
Furthermore, it is said that:
"[A] jury can find a product defective when the record contains sufficient evidence of one or more of the following: a dangerous defect in manufacture; an unreasonably dangerous design; corcumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely." Hursh, American Law of Products Liability § 5A:6, at 362 (Supp. 1973), citing Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 (1967).
Applying these statements to the facts at hand, it is evident that the tractor in question was unreasonably dangerous when it left Ford's hands, due to a defect in the design of the safety switch system. Ford's expert witness testified that the purpose of the safety switch was to prevent the tractor from starting in gear. Ford received reports from the field that some model 5000 tractors were starting in gear and notified all dealers of the problem, recommending that a shorter plunger and a dowel bolt be installed to alleviate the danger. It was the opinion of plaintiff's expert witness that the plunger was too long and caused excessive wear of the safety switch. Ford's expert admitted that because of tolerance stack-up in the safety switch system, and the length of the plunger, some tractors could be started in gear. From this testimony, it appears that when the tractor left the hands of Ford, it was defective due to a faulty design of the safety switch system. Taking into account the fact that farmers must frequently stand *173 beside tractors to operate the hydraulic system and change or adjust implements, and considering the testimony that it is a common practice for farmers to start their tractors from the ground, it must be concluded that the defective design of the safety switch system rendered this tractor unreasonably dangerous.
The next element of proof is causation. It is necessary for the plaintiff to prove that the defect in the product was the proximate cause of the injury. Before the defect in the product can be isolated as the cause, it must be shown that the product reached the consumer without substantial change in its condition.
The Court of Appeals of Washington state confronted the issue of whether or not the product reached the consumer without substantial change in the recent decision of Bombardi v. Pochel's Appliance and T.V. Company, 9 Wash. App. 797, 515 P.2d 540 (1973). Judgment was granted in favor of a purchaser of a second-hand television set against the manufacturer for fire damage caused by a defect in the set. The Admiral television set was sold by an authorized dealer in 1967 and was serviced by the dealer seven or eight times during its first ownership. The same set was sold "used" to the plaintiff in 1970. In addressing the question of "substantial change", the court noted that although the set had been serviced a number of times, only Admiral parts were used and the work was performed by factory-trained technicians. Based on these facts, the Court held "... that there was sufficient evidence to indicate that the used set purchased by Mrs. Bombardi was in essentially the same condition as when it was originally manufactured, ..." [515 P.2d at 545].
In the case at hand, the tractor was over four years old when it was purchased by Matthews. It had a previous owner and had sustained serious damage in a fire. However, the tractor had been rebuilt using genuine Ford parts, with all damaged parts replaced by factory-trained mechanics. The mechanics found that the plunger was not damaged, and the proof is sufficient that the plunger in the tractor at the time of the accident was the identical one installed at the factory. Prosser discusses this point as follows:
"Tracing the defect in the product into the hands of the defendant confronts the plaintiff with greater difficulties. There is first of all the question of lapse of time and long continued use. This in itself will never prevent recovery where there is satisfactory proof of an original defect; ..." Prosser, Law of Torts § 103, at 674 (1971).
Since the proof here is sufficient to show that the excessive length of the plunger was the original defect and was in the same condition at the time of the accident as when it left the factory, the requirement of Rest. (2d) Torts § 402A that it reach the consumer without substantial change is satisfied in this case.
This leaves the question of proximate cause. This is discussed in 2 Frumer and Friedman, Products Liability § 16A[4]e, at 3-306 to 3-310 (1973):
"[I]n a strict liability in tort cause of action, expert testimony may be used, and reasonable inferences from the circumstances may be drawn. Absolute proof that injury was the result of the defect is not essential, and the burden of proof can be satisfied by showing sufficient facts to allow a jury to infer defective quality and that such defective quality was a substantial element in producing the claimant's injury."
It was the opinion of the circuit judge, sitting without a jury, that the facts were sufficient to establish a causal connection between the defect and the injury. The relevant portion of his opinion reads as follows:
"This Court is of the opinion that taking all of the facts, as known, that the only logical conclusion one can reach from said known facts is that the deceased was adjusting the equipment, *174 cranked the tractor to use the power lift or to make some adjustment without checking the gears, the tractor cranked and knocked him down with the equipment and pulled the disc upon him. It is therefore the opinion of this court that the direct and proximate cause of the accident was the dependency of the deceased upon the safety switch, and it did not function and caused the accident; and the design of the safety switch was the direct and proximate cause of the accident."
Plaintiff's expert witness testified that in his opinion, the defect in the safety switch system allowed the tractor to be started in gear. In its answer, Ford admitted that the tractor cranked in gear and ran over Matthews. There was testimony to the effect that after the accident, Matthews himself stated that the tractor cranked in gear. Ford asserts that this was hearsay evidence and inadmissible. Appellee counters, saying that the testimony comes within the res gestae exception. Appellee correctly points out that even if this testimony were inadmissible, its admission was harmless error, since the fact that the tractor started in gear was admitted in the pleadings. Furthermore, Ford's own expert testified that if the plunger were not damaged by the fire, then it could be assumed that it was the "real culprit in this case." It appears, therefore, that the judge's finding of fact that the elements of American Law Institute's Restatement (Second) of Torts § 402A (1965) adopted in State Stove, supra, were met is supported by substantial evidence. There is proof that the tractor left Ford's hands in a defective condition which rendered it unreasonably dangerous, and, further, there was sufficient proof from which the judge could find a causal connection between the defect and the injury.
The appellant Ford next contends that Matthews' act of standing on the ground and starting the tractor while in gear was a misuse of the product. It is argued that such misuse is an absolute limitation on Ford's liability. The basic authority for this position is Comment (h), Rest. (2d) Torts § 402A, which reads in part: "A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling ... the seller is not liable." [Rest. (2d) Torts § 402A, at 351]. Several cases are cited by appellant to illustrate this proposition. However, in the cases cited, the court either found that there was no defect and the accident was caused by a misuse, or even if there were a defect, it played no part in the causation of the accident. Here the situation is clearly distinguishable. It is apparent that the failure of the safety switch to prevent the tractor from cranking in gear was a cause of the accident. The failure of the decedent to make sure the tractor was in neutral before starting [if that were true] may be characterized as the omission of a customary precaution, although there is no evidence that he was warned of this danger, or that he knew of the danger. Nevertheless, this was not such a misuse of the tractor as to relieve Ford from its strict liability for the defective condition of the tractor.
Although misuse of a product that causes an injury is normally a bar to strict liability, it is said that: "... [T]he manufacturer is not liable for injuries resulting from abnormal or unintended use of his product, if such use was not reasonably foreseeable. The issue is one of foreseeability and misuse may be foreseeable." (Emphasis added) 1 Frumer and Friedman, Products Liability § 15.01, at 351 (1973).
A recent law review writer expressed it in this manner: "In strict liability cases the same duty to foresee certain unintended uses has been recognized, and ordinarily the factual issue of the foreseeability of a particular use has been left to the jury." Noel, Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 25 Vand.L.Rev. 93, 97 (1972).
*175 It is admitted that the tractor in question was designed to prevent its starting in gear. It is apparent that it could be foreseen by Ford that one day a tractor operator might carelessly crank the engine without first making certain that it was not in gear (as recommended in the owner's manual), especially if he were aware of the purpose of the safety switch system. In short, even if Matthews were guilty of negligence, such negligence was reasonably foreseeable by Ford and is not a bar to an action based on strict liability resulting from a defective tractor.
A question quite pertinent to this discussion was posed in a recent law review article: "Should a distinction be made between use for an abnormal purpose and use for a proper purpose but in a careless manner, as is the case when the plaintiff fails to follow instructions?" [Noel, 25 Vand.L.R. at 94]. It is apparent that Matthews' actions in starting the tractor did not constitute a "misuse", but are more accurately characterized as "use for a proper purpose, but in a careless manner." The failure of the decedent to act in a reasonably prudent manner and to exercise the customary precautions [even if he had been warned of the danger] amounts to contributory negligence on his part. As stated by Prosser:
"Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection." Prosser, Law of Torts § 65, at 416-417 (1971).
It is the prevailing rule that contributory negligence is not a bar to recovery for strict liability in tort. This is supported by the following statement from a recent law review article:
"With reference to contributory negligence, almost all of the courts adopting the strict tort principles as set forth in the Restatement have also adopted the view expressed in the comment that an objectively negligent failure to discover the defect in a product, or to guard against the possibility of its existence, is not a defense." (Emphasis added) Noel, 25 Vand.L.R. at 128, 129.
The particular negligent act of Matthews was his failure to guard against the possibility of a defect in the safety switch system, and while this contributed in part to the accident, under the majority rule it is not a defense to strict liability tort.
It is asserted by the appellant that even assuming Ford was at fault originally, that the failure of Ray Brothers to remedy the defect after express notification by Ford, constituted an act of negligence on their part sufficient to relieve Ford of its original liability. In short, Ford contends that the negligence of Ray Brothers was the sole proximate cause of the injury.
While it is recognized that a finding of strict liability in tort does not preclude a finding of negligence, it is evident from his opinion that the circuit judge based his finding on strict liability. Therefore, the question for decision is whether or not the negligent acts of Ray Brothers were sufficient to relieve Ford from liability under Rest. (2d) Torts § 402A.
Almost all of the cases involving the question of intervening cause relate to negligence actions. However, the general rules established by those cases should be applicable to the facts at hand. As stated by Prosser: "Although there have been few decisions, there is every reason to expect that the same conclusions, in general, will be reached when strict liability is in question." Prosser, Law of Torts § 102, at 668 (1971).
To support its position, appellant relies primarily on three cases: State Stove v. Hodges, 189 So.2d 113 (Miss. 1966); E.I. DuPont De Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954); and Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840 (1946).
State Stove, supra, is distinguishable in one very key aspect  the majority of the *176 Court found that there was no defect in the heater when it left State Stove's hands. Here, the safety switch system was defective when it left Ford's hands, as shown by the evidence in this case. Admittedly, the failure of the contractors to install the safety device in State Stove was comparable to the failure of Ray Brothers to remedy the defect in the safety switch system, but in State Stove this negligent omission was found to be the only cause of the accident. In the case at bar, while Ray Brothers' negligence was a secondary cause of the accident, it was not the only cause. The case at bar necessarily involves a weighing of two contributory causes, whereas no such question was involved in State Stove.
The DuPont case presents a set of facts similar to the present case. A chemical ingredient used in cattle feed was found to be harmful to cattle. The retailer was personally notified of the danger, but chose to continue to sell the product for cattle feed. The Court held that the retailer's conscious act in selling the feed after the personal warning was an intervening, superseding cause and relieved DuPont of its original negligence. In comparing DuPont to the present case, it must be kept in mind that it was decided over a decade before Mississippi adopted strict liability in tort, and the decision was based on negligence, warranty, warning and privity of contract. The adoption of American Law Institute's Restatement (Second) of Torts § 402A (1965) carried with it the strong public policy requiring the burden of accidental injuries caused by defective products to be borne by the manufacturers (when the defect is a proximate cause of the accident).
Appellee argues that the DuPont case is distinguishable because the court there only considered the duty of DuPont to warn of the danger. In the present case, due care involves two elements: the duty to warn of the defect plus the duty to remedy the defect. It is clear that both DuPont and Ford warned the retailers of the danger. In the present case, there was an additional issue of whether Ford's duty required it to remedy the defect or make sure that it was corrected by the dealer.
In the case of Ford Motor Company v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840 (1946), Ford discovered that a particular model had a defective hood latch. Repair kits were sent to all dealers. The dealer gave the replacement part to a salesman who was using the car as a demonstrator. Feeling that it was unnecessary, the salesman declined to utilize the part. The car was sold by the salesman without warning the purchaser of the problem. An accident occurred because of the defective hood latch. The court held that the act of the salesman was an intervening, superseding cause, unforeseeable by Ford, which relieved Ford from its original negligence. As in DuPont, strict liability in tort was not available to the plaintiff in Wagoner. Furthermore, while the rules of law discussed in Wagoner are accurate, the ultimate question of proximate cause is a factual determination for the jury.
The issue, therefore, is whether Ray Brothers' negligence was an intervening cause sufficient to relieve Ford of its liability. The following passage from Prosser may isolate the true issue:
"The question is always one of whether he [the party initially liable] is to be relieved of responsibility, and his liability superseded, by the subsequent event. In general, this has been determined by asking whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated. It is therefore said that the defendant is to be held liable if, but only if, the intervening cause is foreseeable." Prosser, Law of Torts § 44, at 272 (1971).
A recent California case discussed the issue as follows:
"Central to the inquiry here is the question whether under the particular circumstances the manufacturer could have reasonably foreseen that the neglect *177 of third persons to respond to the manufacturer's warnings of danger would frustrate its corrective efforts. Insofar as machinery dangerous to life and limb is involved, we think it a question of fact whether a manufacturer would reasonably anticipate that a wholesaler, a dealer, a retailer, an owner, or a user, may not positively respond to warnings of the need to correct a design deficiency." Balido v. Improved Machinery, Inc., 29 Cal. App.3d 633, 105 Cal. Rptr. 890, 901 (1972).
Here, the defect in the safety switch system started the chain of events which led to the death of Matthews. When the tractor left Ford's hands, it was defective and unreasonably dangerous. Just as the duty of care increases with the degree of danger, so should the range of foreseeability. Ford was not relieved of all liability by its single service bulletin warning Ray Brothers of the possible defect. Where the danger to human life and limb is great, the possibility that the tractor might leave the dealer's hands without the recommended repairs comes within Ford's range of foreseeability. Therefore, the negligent omission of the dealer is not the sole, proximate cause of the accident.
The question of liability in this case is largely a factual issue, and we hold that there is substantial evidence on which the judge could base his decision holding Ford strictly liable in tort for the injury to the deceased Earnest Matthews.
We have examined the belated objections made by Ford to the method used by the trial judge in determining the damages due to the estate of the deceased, and we are of the opinion that the total sum determined by the trial judge to be due was not excessive and the case should be affirmed.
Affirmed.
PATTERSON, INZER, SMITH and SUGG, JJ., concur.