463 So.2d 1044 (1985)
James THOMAS, et al.
v.
MUNSON MACHINERY COMPANY, INC. (Formerly Munson Mill Machinery, Inc.)
No. 54577.
Supreme Court of Mississippi.
January 23, 1985.
Don O. Gleason, Ocala, Fla., Frank W. Hunger, Lake, Tindall, Hunger & Thackston, Greenville, for appellants.
Fred C. DeLong, Jr., Campbell & DeLong, Greenville, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
James Thomas filed suit in the Circuit Court of Washington County, Mississippi, *1045 against Munson Machinery Co., Inc., [Munson] formerly Munson Mill Machinery, Inc., for personal injuries sustained while he was cleaning the interior of a chemical mixer. The declaration was based on strict liability in tort and general negligence. Upon a stipulation of fact by the parties and agreement that the case be submitted to the trial judge on the issue of whether or not a summary judgment should be granted, the trial judge, Honorable B.B. Wilkes, found that there was no material issue of fact and, on a question of law, the plaintiff had not stated a case against Munson. Therefore, the trial judge sustained the motion for summary judgment, dismissed the declaration, and the plaintiff Thomas has appealed here.
The sole question before this Court is whether or not the lower court erred in sustaining appellee's motion for summary judgment.
The record before the lower court on the motion for summary judgment consisted of (1) the plaintiff's declaration and the defendant's answer thereto, and (2) the stipulation of the parties. The lower court considered the stipulation as if it were a joint affidavit of the parties which fully complied with all the requirements of Rule 56 respecting affidavits. In making a finding of fact, the lower court adopted verbatim the stipulation of the parties, pertinent parts of which are set forth in the Appendix.
The chemical mixer, alleged to be the defective culprit in this case, was manufactured prior to 1959 by appellee, was sold by it during the year 1959 to Olin-Mathison Corporation [Olin], and was shipped to Olin's plant in East Omaha, Nebraska. Before the mixer could be operated and used, an electric motor, electrical motor starter and switches were required to be installed in it. When sold by appellee to Olin, the mixer was not equipped with any of those parts, and it was the responsibility of Olin to acquire and install the electrical parts before Olin could put the mixer into operation. Appellee did not manufacture the electrical motor, motor starter, wiring and switches, or sell them to Olin, nor did it participate in the selection by Olin of those parts and equipment, or in the installation of such parts in the mixer by Olin. Appellee specifically advised Olin in writing at the time Olin purchased the mixer:
It is suggested that a suitable fused disconnect switch be installed in the power line ahead of the motor starter so that in the event of repairs being needed, it will be possible to shut off power so that there will be no chance of accident.
At sometime subsequent to installation of the electrical equipment in the mixer, Olin moved the machine from its plant in Nebraska to its plant in Washington County, Mississippi, and reinstalled it for use in the Mississippi plant. Appellee did not participate in any manner in the moving or reinstallation of the machine in Mississippi. The accident in which appellant was injured, occurred in 1973 in Washington County, Mississippi, approximately thirteen (13) years after the sale of the mixer by appellee to Olin. Appellant contends that the mixer was defective in that (1) it was not equipped with any fail-safe device which would prevent the mixer from operating when the door was open, (2) it was not equipped with any device which would shut off the mixer after part of a human body was caught in it, so as to minimize the injury, and (3) there was nothing on the mixer warning users that it was in an unreasonably dangerous condition by reason of the other alleged defects.
In our opinion, Mississippi law has stated principles which control this case. State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966). State Stove was the manufacturer of hot water heaters. One such heater was installed by the firm of Yates and Gary. Subsequently, the heater exploded, destroying the Hodges residence and its contents, and Hodges brought suit for damages against State Stove, the manufacturer, and Yates and Gary, the installer. State Stove had installed two thermostats controlling two heating units in the water heater and a plastic dip tube or pipe designed to carry cold water from the top *1046 to the bottom of the tank, all said installations being performed at State Stove's factory as a part of the manufacturing process. The completed hot water heater was sold and shipped in a cardboard box and was ultimately purchased by Yates and Gary and installed by them in the Hodges residence.
State Stove included written instructions, which accompanied the water heater, and specified that a combination temperature and pressure relief valve should be placed on the water heater by the person installing it. Yates and Gary did not follow those instructions but, instead, they put only a pressure relief valve and check valve on the water heater and no temperature control valve. Seven months after the water heater was installed in the Hodges home, the explosion and fire occurred.
The facts established in State Stove indicated that (1) the two thermostats installed by State Stove at the factory failed to work properly; (2) this allowed the temperature in the tank to rise to a point where the plastic dip tube melted, preventing cold water from passing from the top to the bottom of the tank; (3) which in turn permitted pressure to build up to a point where the hot water heater exploded; and (4) if Yates and Gary had installed a temperature control valve, as instructed by State Stove, it would have cut off the heating units before such pressure built up and, therefore, the explosion would not have occurred. In State Stove, the Court held:
State Stove has no liability here, under Restatement section 402A, (1) because the water heater as manufactured was not in "a defective condition unreasonably dangerous to the user or consumer or to his property"; and (2) because it was not expected to and did not reach the Hodges "without substantial change in the condition in which it * * * (was) sold." (3) Further, the negligent failure of Yates and Gary, through their agent Pittman, to follow the instructions of the manufacturer in installing the water heater, by failing to use a temperature relief valve, was the intervening, sole proximate cause of the explosion.
* * * * * *
However, it is undisputed that, if Yates and Gary had followed the instructions of State Stove, the combination valve with a temperature control would have prevented the temperature in the tank from reaching the point where steam would be produced (312 degrees F.), when the explosion resulted, and where the dip tube would melt. The chancery court erred in not attaching significance to this important fact.
Further, the heater was not expected to and did not reach the Hodges "without substantial change in the condition in which" the manufacturer sold it. State Stove clearly directed the installer to place a combination valve on it... . Subsequent installation of safety valves by another is in this sense a substantial change in condition... .
* * * * * *
And finally, the failure of Yates and Gary to install the prescribed and required temperature relief valve, which would have prevented the explosion, was an intervening, sole proximate cause of the damages suffered by complainants. [Citations omitted].

E.I. Du Pont de Nemours & Company v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954), is directly in point on this issue. There the manufacturer of the chemical compound gave express notice to the processor not to use it for cattle feed. The processor ignored this warning, and its failure to heed it was the intervening, sole proximate cause of the purchaser's damages.
189 So.2d at 121, 122, 123.
Appellant cites Ford Motor Co. v. Matthews, 291 So.2d 169 (Miss. 1974), wherein the Court discussed intervening third party negligence and quoted from the opinion that "It is therefore said that the defendant is to be held liable if, but only if, the *1047 intervening cause is foreseeable."[1] However, in Matthews, this Court distinguished that case from State Stove in the following language:

State Stove, supra, is distinguishable in one very key aspect  the majority of the Court found that there was no defect in the heater when it left State Stove's hands. Here, the safety switch system was defective when it left Ford's hands, as shown by the evidence in this case. Admittedly, the failure of the contractors to install the safety device in State Stove was comparable to the failure of Ray Brothers to remedy the defect in the safety switch system, but in State Stove this negligent omission was found to be the only cause of the accident. In the case at bar, while Ray Brothers' negligence was a secondary cause of the accident, it was not the only cause. The case at bar necessarily involves a weighing of two contributory causes, whereas no such question was involved in State Stove.

291 So.2d at 175-76.
We are of the opinion that the lower court properly applied the law to the undisputed (stipulated) facts of the case; that it correctly held there was no material issue of fact to be submitted to a jury; and that judgment was correctly entered in favor of the appellee Munson. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.

APPENDIX
E. The Court specifically finds as fact the following:
1. Prior to 1959, Defendant manufactured the chemical mixer which is the subject of this lawsuit.
2. In 1959, the mixer in question was sold by Defendant to Olin-Mathison Corp. and shipped to Olin's plant at East Omaha, Nebraska.
3. In order for the mixer to be used (operated) by Olin, it was necessary for it to be connected to an electric motor, and for an electrical motor starter and switches to be installed.
4. The mixer, as sold by Defendant and as purchased by Olin, was not equipped with any electric motor, motor starter, wiring or switches. To the contrary, after it purchased the machine, Olin acquired from third party or parties the necessary electric motor, motor starter, wiring and switches, and Olin then installed all of same, connecting them to the mixer.
5. Defendant did not manufacture or sell the electric motor, motor starter, wiring or switches which were in use originally or which were in use at the time of Plaintiff's accident.
6. Defendant did not participate in any way in the wiring or installation of the mixer by Olin, in either Nebraska or Mississippi.
7. Defendant did not participate in any way in the selection by Olin of the electric motor, motor starter, wiring or switches which Olin used in connection with the mixer, or in the installation of any of same by Olin, in Nebraska or in Mississippi.
8. Defendant did specifically advise Olin, in writing, at the time Olin purchased the mixer,
It is suggested that a suitable fused disconnect switch be installed in the power line ahead of the motor starter so that in the event of repairs being needed, it will be possible to shut off power so that there will be no chance of accident.
9. The actual manner in which the installation was done by Olin in Nebraska is unknown.
10. Some time later, Olin moved the mixer from its plant in Nebraska to its plant in Washington County, Mississippi, and re-installed it for use in the Mississippi plant. Again, Defendant did not participate *1048 in any way and the manner in which the re-installation was done is unknown except that it was done in such manner that the motor did start as described in paragraphs I(13) and I(14) below.
11. The accident in question occurred in 1973, at the Washington County, Mississippi, plant approximately 13 years after the sale of the mixer by Defendant to Olin.
12. It is unknown whether or not any alterations, modifications or changes were made by Olin in the mixer, or in the electric motor, motor starter, wiring or switches, between the time Olin first installed all of same, in 1959, in Nebraska, and the time of the accident in question, in 1973 in Mississippi.
13. The accident in question occurred when Plaintiff was standing in front of the repair hatch or door to the mixer, with part of his body inside the mixer to perform repairs or maintenance, with the electric motor shut off and not running, when said motor started suddenly and caused the mixer to start turning.
14. The motor started as aforesaid either because of a malfunction of the motor, motor starter, wiring or switches, or because some part of Plaintiff's body accidentally came into contact with the starter switch and started the motor.
15. In this suit, Plaintiff alleges that the mixer was defective in that (1) it was not equipped with any fail-safe device which would prevent the mixer from operating when the door was open, (2) it was not equipped with any device which would shut off the mixer after part of a human body was caught in it, so as to minimize the injury, and (3) there was no warning on the mixer warning users that the mixer was in an unreasonably dangerous condition by reason of the other alleged defects as set out above in this paragraph.
16. On January 31, 1979, Olin Corporation filed herein its Petition to Intervene, so as to assert against Defendant its alleged rights to reimbursement, subrogation and exoneration under the Mississippi Workmen's Compensation Act, and shortly thereafter said Petition was granted so that Olin Corporation became an intervening party in this suit. Subsequently, on or about August 21, 1980, Defendant propounded to Olin Corporation certain written interrogatories herein, a true and correct copy of which is attached to and made a part of the formal stipulation herein. Olin Corporation has never answered said interrogatories for the reason, as stated by its attorney herein to the attorneys for Plaintiff and Defendant, that the information sought by the interrogatories relates to times so long past that none of the said information is available and same cannot be ascertained by Olin. Said representation made by Olin's attorney is true, and it is impossible to obtain the information sought by said interrogatories from any source, since said information was known solely by Olin Corporation and/or by its agents and employees who cannot now be identified by Olin.
17. Based upon the alleged defects as set out in paragraph 15 above, Plaintiff claims that Defendant is liable for his injuries under both strict liability in tort and negligence theories.
18. Defendant denies that the mixer was defective in any way and denies that it is liable to Plaintiff under either of Plaintiff's theories.
NOTES
[1] 291 So.2d at 176, quoting from Prosser, Law of Torts § 44, at 272 (1971).