# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00034-SCT

*PAT PICKERING*

*v.*

*INDUSTRIA MASINA I TRAKTORA* **(IMT)**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/96 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID RINGER |
| ATTORNEY FOR APPELLEE: | BARRY H. POWELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/06/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/27/99 |

**BEFORE PRATHER, C.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Dissatisfied with a $12,650 judgment against a tractor manufacturer in this products liability action, Pat Pickering, argues that the lower court erred in crediting the manufacturer with the amount paid to the plaintiff by two other defendents who settled before trial and also erred in further reducing the balance by 75% to reflect the jury's finding that the plaintiff was responsible for 75% of his injuries. In addition, Pickering argues that the lower court erred in instructing the jury, in failing to grant a default judgment against the manufacturer, and in failing to grant an additur. Finding no reversible error, we affirm.

## FACTS

¶2. In October, 1988, appellant Pat Pickering purchased a tractor manufactured by appellee Industrija Masina I Traktora (IMT) and sold by Garner Ford Tractor Company. Pickering primarily used the tractor

in box blade work and minimally in bushhogging and tilling.

¶3. In January, 1989, the tractor's clutch hung up while Pickering was using the tractor. Pickering turned the motor off and unstuck the clutch. In February 1989, the clutch on the IMT tractor hung again while he was operating the tractor. Pickering got down off the tractor, with motor running and the tractor in gear, to pry the clutch loose. Once he pried the clutch loose, the tractor ran over him and broke his left hip.

¶4. Pickering filed suit in Simpson County Circuit Court against IMT, Garner Ford, and Robison & Woods Tractor Co., Inc., after being injured in the accident involving the IMT tractor. Prior to trial, Pickering settled with Garner Ford and Robison & Woods for $40,000. At trial the Circuit Clerk announced the case to the jury as Pat Pickering v. IMT, Garner Ford and Robinson & Woods Tractor Co., Inc.. The case was tried to the jury against IMT only and submitted to the jury on a special verdict. The jury found that the IMT tractor was unreasonably dangerous, that any misuse by Pickering was foreseeable to IMT, that Pickering's damages were $90,600, prior to any reduction based on fault, and that Pickering was 75% at fault for his injuries. Following the formula specified in *McBride v. Chevron U.S.A.*, 673 So.2d 372 (Miss. 1996), the circuit court subtracted the amount of Pickering's settlement with Garner Ford and Robison & Woods, $40,000, from the $90,6000 total producing a balance of $50,600. The lower court then apportioned the $50,600 based on the jury's fault finding that IMT was responsible for 25% of that figure: $12,650. Accordingly, the circuit court entered judgment in favor of Pickering and against IMT for $12,650. Pickering then moved for an additur of $77,950 to restore the full $90,600 damage figure found by the jury. When the trial court denied that motion, Pickering appealed to this Court.

¶5. Pickering raises the following issues on appeal:

> **I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR CREDIT FOR SETTLEMENT BY CO-DEFENDANTS WHERE THE JURY WAS AWARE THAT THERE HAD BEEN TWO DEFENDANTS IN THE CASE, AND THAT NOW THERE WAS ONLY ONE DEFENDANT IN THE CASE.**

> **II. WHETHER THE PLAINTIFFS WERE ENTITLED TO A PEREMPTORY INSTRUCTION ON FAULT GIVEN THAT THE PLAINTIFF'S EXPERT WAS THE ONLY CREDENTIALED WITNESS THAT RENDERED AN OPINION ON FAULT, WHICH OPINION WAS UNREFUTED BY THE DEFENDANT.**

> **III. WHETHER PLAINTIFF WAS ENTITLED TO AN INSTRUCTION ON ABSOLUTE LIABILITY GIVEN THAT THE PLAINTIFF'S BASIS FOR RECOVERY WAS THAT HIS INJURIES WERE CAUSED BY THE DEFECTIVE AND UNREASONABLY DANGEROUS CONDITION OF THE IMT TRACTOR.**

> **IV. WHETHER THE TRIAL COURT ERRED IN GIVING PROPOSED JURY INSTRUCTION NO. D-9.**

> **V. WHETHER THE TRIAL COURT ERRED IN GIVING PROPOSED JURY INSTRUCTION NO. D-7.**

> **VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTERROGATORY FORM OF THE VERDICT WHICH FAILED TO SET OUT EVERY ELEMENT OF THE ACTION BEFORE THE JURY.**

**VII. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE PROPOSED JURY INSTRUCTION NO. P-6.**

**VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IN LIGHT OF THE FACT THAT THE DEFENDANT WAS SANCTIONED BY THE UNITED STATES.**

**IX. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION FOR ADDITUR.**

## LEGAL ANALYSIS

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR CREDIT OF SETTLEMENT BY CO-DEFENDANTS WHERE THE JURY WAS AWARE THAT THERE HAD BEEN TWO DEFENDANTS IN THE CASE, AND THAT NOW THERE WAS ONLY ONE DEFENDANT IN THE CASE.**

¶6. Pickering contends that the $40,000 he received from the settling co-defendants should not have been subtracted from the amount that IMT, the non-settling defendant, owed. Pickering relies on *Whittley v. City of Meridian*, 530 So. 2d 1341, 1346 (Miss. 1988) for the proposition that there are two acceptable practices for determining damages in the situation where co-defendants are involved and one co-defendant has settled with the plaintiff. Under the first procedure the defendant, is allowed "to show, either by the plaintiff or proper witnesses or evidence, that a settlement has been made with one or more of the defendants," without disclosing the amount of the settlement to the jury. The second acceptable procedure allows the parties to stipulate, outside of the presence of the jury, that a settlement has been made by one or more of the defendants and the amount of the settlement. The jury would not be informed of the settlement or the payment, and if a verdict were returned for the plaintiff, the trial judge would reduce the amount awarded by the jury by the amount of the settlement by the other defendants.

¶7. Pickering asserts that the Mississippi Supreme Court has recognized that the second procedure is preferable. Pickering asserts that as soon as the jury became aware of the fact that there were other defendants in the case, the court should have informed the jury why the other defendants were not present. Further he contends that the jury was to be informed about the other defendants in the suit, but not of the settlement with them.

¶8. Pickering argues that upon calling the docket, the Clerk announced the litigants, including the two settling defendants. At no time were the jurors given a *Whittley* instruction. The lower court did not instruct the jury as to who the other parties were, what role they played in the case, that they had made a settlement with the plaintiff, or that any amount awarded by the jury would be reduced by the amount paid by the settling defendants. Pickering argues that when the trial court reduced the amount of damages that the jury awarded to appellant by the amount of the settlements made by the other parties it went against both what the jury was trying to accomplish by its $90,600 award, rewarded in accordance with their instructions, and the basis for the holding in *Whittley.*

¶9. Finally Pickering argues that since the procedures for determining the damages due to a plaintiff were not followed, Pickering's judgment should not be reduced by the amount of the settlement by Pickering with

the prior co-defendants.

¶10. IMT asserts that Pickering's only basis for arguing to this Court that no credit should have been given for the prior settlement of the co-defendants is that, in announcing this case, the Circuit Clerk inadvertently mentioned one of the settling co-defendants as still a party in the case. IMT asserts that no objection was made by Pickering on the record; there was no request for a mistrial; there was no request by the Pickering for the court to instruct the jury in any manner whatsoever as to this inadvertent announcement. Without an objection IMT asserts that Pickering has therefore waived any objection. Further IMT argues that if Pickering's counsel felt aggrieved by the Circuit Clerk's inadvertent announcement of a co-defendant to the jury, counsel could have at any time informed the jury that Pickering had settled with the co-defendant. With this, IMT contends that the trial court correctly calculated and granted credit for the settlement with the co-defendants.

¶11. This Court has announced an acceptable procedure to be used to determine the damages due a plaintiff where co-defendants are involved and one co-defendant has settled with the plaintiff. That procedure allows the jury to be informed of the existence of a settlement but not the amount of settlement (if settlement occurs after the trial begins then it will be necessary to inform the jury why the defendants are no longer present). *Whittley v. City of Meridian,* 530 So. 2d 1341, 1346 (Miss. 1988). If the jury returns a judgment in excess of the settlement the judge can simply adjust the judgment by the amount of the settlement. *Id.*

¶12. Here, the Circuit Clerk called the case as Pat Pickering v. IMT, a Foreign Corporation, and Garner Ford Tractor Company, a Mississippi Corporation. However, the trial judge announced the case as Pat Pickering v. IMT, a Foreign Corporation. Pickering made no objection to the Circuit Clerk's error.

¶13. There is no evidence in the record that the parties stipulated, outside the presence of the jury that a settlement had been made. However, the jury was not informed of the settlement, and the verdict was in favor of the plaintiff. The trial judge then reduced the amount awarded by the jury by the amount of the settlement by the other defendants. This is clearly the correct procedure pursuant to this Court's decision in *Wood v. Walley* , 352 So.2d 1083, 1085 (Miss. 1977), and *Whittley v. City of Meridian*, 530 So.2d 1341, 1346 (Miss. 1988) for cases arising prior to the effective date of Miss. Code Ann. §  85-5-7. The cause of action in the present case arose prior to the July 1, 1989 effective date of §  85-5-7, and the holding in *Wood* is, accordingly, clearly applicable to the case at bar.

¶14. It should be noted, however, that the Fifth Circuit Court of Appeals very recently issued an *Erie*-guess as to whether this Court would continue to apply this dollar-for-dollar or "pro-tanto" credit in cases arising after the effective date of Miss. Code Ann. §  85-5-7. See: *Krieser v. Hobbs*, 166 F.3d 736 (5th Cir. Jan. 28, 1999). The Fifth Circuit noted the near-universal rule that the pro-tanto credit was inapplicable in jurisdictions in which joint-and-several liability had been modified or abolished. *See: Hoch v. Allied-Signal, Inc*., 24 Cal.App.4th 48, 29 Cal.Rptr.2d 615, 621-26 (Cal.App.1994); *Smith v. Zufelt*, 880 P.2d 1178, 1183-88 (Colo.1994); *Kussman v. City and County of Denver*, 706 P.2d 776, 777-82 (Colo.1985).

¶15. The Fifth Circuit concluded that "(w)e think it is clear that the Mississippi Supreme Court, if faced with this question, would follow the large number of other courts who have understood legislative limitation of joint-and-several liability to render incompatible a pro-tanto credit for non-settling tortfeasors." *Krieser*, 166 F.3d at 743[(1)]. Given that the present case arose prior to the July 1, 1989 effective date of §  85-5-7,

it is unnecessary for this Court to address the effect of § 85-5-7's limitation of joint and several liability in the present case. This Court limits its holding on issue I to the facts of the present case and expressly reserve judgment on whether a differing result would be warranted in cases involving causes of action arising after the effective date of § 85-5-7. The ruling of the lower court is affirmed.

## II. WHETHER THE PLAINTIFFS WERE ENTITLED TO A PEREMPTORY INSTRUCTION ON FAULT GIVEN THAT THE PLAINTIFF'S EXPERT WAS THE ONLY CREDENTIALED WITNESS THAT RENDERED AN OPINION ON FAULT, WHICH OPINION WAS UN-REFUTED BY THE DEFENDANT.

¶16. Pickering next argues that his request for a peremptory instruction on defect should have been granted in view of Dr. Talbot's unrefuted expert testimony as to the dangerous character of the design of the IMT tractor clutch activation mechanism. Pickering relies on the case of *McCary v. Caperton*, 601 So. 2d 866 (Miss. 1992) wherein this Court held that a peremptory instruction as to the defendants liability was properly granted where the plaintiff introduced undisputed evidence of fault and damages.

¶17. Pickering contends that Dr. Talbot testified extensively as to how the clutch activation mechanism of the IMT tractor as designed was unreasonably dangerous. Dr. Talbot stated that after examination of the IMT tractor purchased by the appellant and the schematics of the IMT tractor, it was his expert opinion that the IMT tractor was unreasonably dangerous. Pickering contends that Dr. Talbot also testified that it was foreseeable that the clutch would get hung up in the floorboard, due to the design of the IMT clutch activation mechanism, and that an operator would get off the tractor and try to pry the clutch up without putting the tractor in neutral and/or without turning the tractor off.

¶18. Finally Pickering argues that the testimony was unrefuted by the defendant and defendant called no witnesses. Therefore, Pickering contends that he was entitled to a peremptory instruction on defect in view of the IMT's concession that there was a defect.

¶19. IMT contends that the mere existence of a defect in a product does not entitle a plaintiff in a products liability suit to a peremptory instruction on "fault" or "absolute liability." IMT relies on the case of *Sperry-New Holland v. Prestage,* 617 So. 2d 248, 253 (Miss. 1993), for the proposition that to prevail in a products liability case, the plaintiff must prove not only a defect in the product, but also that the defect made the product "unreasonably dangerous."

¶20. IMT argues that a jury issue existed as to whether the sticking clutch made the IMT tractor "unreasonably dangerous." IMT argues that Pickering conceded in his testimony when the clutch stuck, he was not in any danger as he sat on the tractor. Further, IMT states that it was only when the plaintiff stood in front of the tractor wheel and pried the clutch up with the motor running and the tractor in forward gear that there was any danger.

¶21. Finally, IMT argues that the jury returned a verdict in favor of Pickering, thus error, if any, is cured regarding the jury instruction. IMT relies on *Dunn v. Jack Walker's Audiovisual Center,* 544 So. 2d 829, 831 (Miss. 1989), for the proposition that errors in jury instructions are moot where the plaintiff receives the most favorable result he could have received if the instruction had been given.

¶22. The standard of review for whether a peremptory instruction should be granted is the same as the criteria for a directed verdict. *Herrington v. Spell,* 692 So. 2d 93, 97 (Miss. 1997); *Wilner v. Miss.*

*Export R. Co.*, 546 So. 2d 678, 681 (Miss. 1989). Because the request for a peremptory instruction is the "functional equivalent of a motion for a directed verdict under Rule 50(a)," we apply the same standard to both. *Id.*

¶23. The evidence, in passing on a request for peremptory instruction or j.n.o.v., will be viewed in the light most favorable to the party opposed to the motion, giving the benefit of all the favorable inferences that may be reasonably drawn from the evidence, and considering any uncontradicted evidence offered by the moving party. *Turner v. Turner*, 524 So. 2d 942, 944 (Miss. 1988) citing *Weems v. American Security Insurance Co.*, 450 So. 2d 431, 435 (Miss. 1984); *Bay Springs Forest Products, Inc. v. Wade,* 435 So. 2d 690, 693 (Miss. 1983). If the facts so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, then the peremptory instruction should be granted. *McMillan v. King*, 557 So.2d 519, 522 (Miss. 1990).

¶24. At trial Pickering's expert described how the clutch activation mechanism was unreasonably dangerous. However, Pickering testified that when the clutch stuck, he was not in any danger as he sat on the tractor. The danger arose when Pickering stood in front of the tractor wheel and pried the clutch up with the motor running and the tractor in gear. To prevail in a products liability case, the Plaintiff must prove not only a defect in the product, but also that the defect made the product "unreasonably dangerous." *Sperry-New Holland v. Prestage,* 617 So. 2d 248, 253 (Miss. 1993).

¶25. Dispositive of the issue here is that errors in jury instructions are moot where the plaintiff receives the most favorable result he could have received if the instruction had been given. *Dunn v. Jack Walker's Audiovisual Center,* 544 So. 2d 829, 831 (Miss. 1989). In this case, the most favorable result for Pickering on a liability instruction was a verdict for Pickering. In the lower court, Pickering received the most favorable verdict. Therefore, here, because the jury found for Pickering and he received the most favorable result, the lower court did not err by not granting a peremptory instruction on defect.

### III. WHETHER PLAINTIFF WAS ENTITLED TO AN INSTRUCTION ON ABSOLUTE LIABILITY GIVEN THAT THE PLAINTIFF'S BASIS FOR RECOVERY WAS THAT HIS INJURIES WERE CAUSED BY THE DEFECTIVE AND UNREASONABLY DANGEROUS CONDITION OF THE IMT TRACTOR.

¶26. Pickering argues that he did not base his action on any negligent acts of IMT. Further, Pickering contends that his expert witness offered unrefuted testimony that the design defect of the IMT tractor, which allowed the clutch activation mechanism to become hung-up in the floorboard of the tractor, was unreasonably dangerous. Therefore, Pickering contends that he was entitled to an instruction on absolute liability. Pickering relies on *Falstaff Brewing Corp. v. Williams*, 234 So. 2d 620, 623 (Miss. 1970) for the proposition that "[A] manufacturer incurs an absolute liability when an article that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings."

¶27. However, there is no evidence in the record that Pickering requested or was denied an absolute liability instruction. The trial judge cannot be put in error on a matter which was not presented to him for decision. *Cossitt v. Federated Guaranty Mutual Ins. Co.,* 541 So.2d 436, 446 (Miss. 1989) Therefore, this assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN GIVING PROPOSED JURY

**INSTRUCTION NO. D-9.**

¶28. Pickering next contends that comparative negligence, or other defense, to negligence, are not applicable to an action sounding in strict liability. *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 264 (Miss. 1993). In the case at bar, Jury Instruction D-9 constituting an instruction on contributory negligence was given by the lower court. Pickering argues that in the case at bar his claim was based solely on the theory of strict liability and no evidence of the defendant's negligence was produced or tried. With that, Pickering contends that IMT should not have been allowed a comparative negligence instruction, a defense to a tort of which it was not accused.

¶29. IMT cites Miss. Code Ann. §11-7-15 (1972), which provides that:

> **In all actions hereafter brought for personal injuries**... the fact that the person injured...may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured....

(emphasis added)

¶30. In the case of *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), the jury's damage award was reduced by 35 percent due to Prestage's comparative negligence. Until that time, this Court had never definitively stated that comparative negligence is applicable to strict liability cases. The issue was not raised on appeal and was not before this Court. This Court declined to address the issue and affirmed the reduction.

¶31. However, in *Horton v. American Tobacco Co.,* 667 So. 2d 1289 (Miss. 1995), comparative negligence was applied to a strict liability action. In *Horton,* the trial began with the plaintiffs pursuing two theories of tort liability: negligence and strict liability. At the close of the plaintiffs' case-in-chief, the trial court granted a partial directed verdict dismissing the plaintiffs' claims of negligence. The case was presented to the jury on the sole theory of strict liability. Although the case was submitted solely on the issue of strict liability, the defendant in *Horton* was granted a comparative negligence instruction by the trial court. The jury returned a verdict in favor of the plaintiffs, but awarded zero damages. Furthermore, in *Horton*, a majority of this Court also held that assumption of the risk is subsumed in the comparative fault doctrine in a strict liability case.

¶32. In the case sub judice, the trial court allowed the following instruction:

Instruction D-9

> If you find from a preponderance of the evidence that the Plaintiff failed to use reasonable due care either in not taking the tractor back to the dealer to fix the clutch after the first time the clutch stuck and continuing to operate the tractor, or in unsticking the tractor clutch while standing in front of the tractor wheel with the tractor motor running and in gear, or both, then the Plaintiff was guilty of negligence. If you find that the Plaintiff's negligence, if any, was the sole proximate cause of the Plaintiff's injury, then it is your duty to return a verdict for the Defendant. Otherwise, if you find that Plaintiff's negligence, if any, proximately contributed to his own injury, then you must, under the law, reduce any award that you might otherwise award the Plaintiff by the proportion of the causal negligence, or fault, that you attribute to the Plaintiff.

¶33. In accordance with *Horton*, the trial court did not err in allowing the comparative negligence instruction to the jury.

## V. WHETHER THE TRIAL COURT ERRED IN GIVING PROPOSED JURY INSTRUCTION NO. D-7.

¶34. Pickering argues that a proposed jury instruction should be granted if it is supported by both the law and by the evidence presented at trial. *Munford Inc., v. Fleming*, 597 So. 2d 1282, 1286 (Miss. 1992). Pickering contends that jury instruction D-7 basically affirmatively informs the jury that Pickering's actions constituted a misuse of the tractor, in effect a peremptory instruction in regards to the issue of misuse.

¶35. Pickering relies on the case of *Ford Motor Co. v. Matthews*, 291 So. 2d 169 (Miss.1974), where the plaintiff was killed when he was run over by a tractor after starting the engine of the tractor while standing in front of a tire while leaving the tractor in gear.

¶36. Pickering argues that Jury instruction D-7 does not give the jury the option to determine first whether his action did in fact constitute a misuse of the tractor. Further, argues Pickering, the instruction ignores the threshold issue of whether the IMT tractor was unreasonably dangerous as a result of the design of the clutch activation mechanism and if the jury finds that the tractor was unreasonably dangerous the issue of his misuse or non-misuse is irrelevant.

¶37. Finally, Pickering contends that IMT's Proposed Jury Instruction No. D-7, which is not supported by either the law or the evidence, is confusing to the jury and should not have been granted.

¶38. IMT argues that this instruction was the converse of Pickering's Instruction P-5 instructing the jury that if the plaintiff was guilty of unforeseeable misuse of the tractor which caused his injuries, then the jury should return a verdict for the defendant.

¶39. Finally IMT contends that Pickering prevailed on the issue of foreseeable/unforeseeable misuse and the jury granted a verdict for the plaintiff. Further, IMT contends that even there were any error in Instruction D-7, it was cured by the jury's returning a favorable verdict for Pickering on the issue of liability. *Dunn v. Jack Walker's Audiovisual Center,* 544 So. 2d 829, 831 (Miss. 1989).

¶40. At trial the following instruction D-7 was given to the jury:

> The Court instructs you that if you find that Plaintiff's injuries were caused by his misuse of the tractor and that this misuse of the tractor was not reasonably foreseeable by the manufacturer of the tractor, then it is your duty to return a verdict for the Defendant.

¶41. In Mississippi, misuse as a bar to recovery for products liability is a question of fact for the jury. *Materials Transportation Co., v. Newman*, 656 So. 2d 1199, 1202 (Miss.1995); *Early-Gary, Inc. v. Walters*, 294 So. 2d 181, 186 (Miss. 1974).

¶42. Conversely, the trial judge granted jury instruction P-5 which states:

> Ladies and gentlemen of the jury, if you find by a preponderance of the evidence in this case that: (1) the Industrija Masina I Traktora was defective; and (2) it was reasonably foreseeable to Industrija Masina I Traktora that Pat Pickering, or any other consumer, would attempt free the clutch from the

floorboard of the tractor while the tractor motor was running and was otherwise in gear and without putting the tractor in neutral, then you must find that this was not such a misuse of the tractor as to relieve Industrija Masina I Traktora from strict liability for the defective condition of the tractor.

¶43. In the case sub judice, the jury returned a verdict for Pickering. The jury also found that the act of unsticking the clutch with the tractor running and in gear was a foreseeable misuse of the tractor. "[E]rrors in jury instructions are deemed, harmless, moot or immaterial...[where] the jury verdict on the point at issue gave the appealing party the most favorable result he could have received had the trial court handled the point correctly." *Horton v. American Tobacco Co.*, 667 So. 2d 1289, 1292 (Miss. 1995). The trial court did not err in granting this instruction.

### VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTERROGATORY FORM OF THE VERDICT WHICH FAILED TO SET OUT EVERY ELEMENT OF THE ACTION BEFORE THE JURY.

¶44. Pickering argues that the special verdict form failed to set out separately the issues of fact as raised by the parties. Further, Pickering argues that the special verdict form failed to allow the jury to determine whether the actions of Pickering, in fact, constituted a misuse of the tractor under the circumstances. Pickering contends that it included negligence elements which were not at issue in this action. Pickering relies on the case of *Jones v. Westinghouse Elec. Corp.,* 694 So. 2d 1249 (Miss. 1997), wherein the plaintiff objected to the form of the special verdict instruction submitted and this Court held that the failure to include the issues of fact as requested by the Plaintiff was reversible error. *Id.* at 1251. Therefore, Pickering argues, the special verdict form should not have been given as such, but should have been modified to separately set out every issue of fact, and to include any reference to the negligence of Pickering.

¶45. IMT contends that the trial court submitted the case to the jury based on the interrogatories. With the exception of the question regarding Pickering's comparative negligence, Pickering's attorney made no objections at trial or in this portion of his appeal brief to the elements set forth in these interrogatories or to any lack of any element that Pickering claims should have been set forth in the jury interrogatories.

¶46. The trial court allowed the following form of the verdict:

1(a) Was the IMT tractor defective, and did it reach Pat Pickering without substantial change?

(b) Was the act of unsticking the clutch with the tractor running and in gear a foreseeable misuse of the tractor?

(If your answer to either is "no" go no further.)

2 Was the condition of the tractor a direct and proximate cause of any injuries received by the Plaintiff?

(If your answer is "no" go no further.)

3.Was the Plaintiff negligent in unsticking the clutch on the tractor?

4. If so, was the Plaintiff's negligence a direct and proximate cause of any injuries he received?

5. If so, was the Plaintiff's negligence, if any, in unsticking the clutch reasonably foreseeable by the manufacturer of the tractor?

6. What do you find the Plaintiff's total damages, unreduced by any percentage of fault, if any, to be as a result of the injuries received?

7. What, if any, was the percentage which the condition of the tractor contributed to the injuries received by the Plaintiff?

8. What was the percentage which any negligence of the Plaintiff contributed to his injuries?

(The percentages in 7 and 8 must total 100%.)

¶47. Miss. Code Ann. § 11-7-157 (1972), states, "No special form of the verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein." This Court in *Mississippi Valley Gas Co., v. Estate of Walker,* No. 95-CA-00907-SCT, 1998 WL 449678 (Miss.), set forth the applicable test for determining whether a verdict is sufficient as follows:

> [T]he basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court. This well-established rule of law has long been recognized by this Court...

*Mississippi Valley Gas Co., v. Estate of Walker*,725 So.2d 139,_ (Miss. 1998) (quoting *Harrison v. Smith*, 379 So.2d 517, 519 (Miss. 1980).

¶48. Rule 49(b) of the Mississippi Rules of Civil Procedure provides:

> The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring written findings thereon as it deems appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

¶49. In accordance with relevant principles of law regarding the special form of the verdict, the form of the verdict in this case was sufficient. The trial court did not err in allowing the interrogatory form of the verdict because the form accurately set out the elements of the action.

### VII. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE PROPOSED INSTRUCTION NO. P-6.

¶50. Pickering argues that the lower court erred in refusing to grant his proposed jury instruction P-6. Pickering contends that instruction P-6 correctly embodies the law of what constitutes an assumption of the risk and that it is also supported by the evidence deduced at trial. Pickering relies on the case of **Munford Inc., v. Fleming,** 597 So. 2d 1282 (Miss. 1992). In **Munford,** the plaintiff slipped and fell in a puddle of water which leaked from the spout of a bottle of spring water that had been placed on one of the store's shelves by an employee. The lower court granted the following instruction:

> [T]he Court instructs the jury that if you find from a preponderance of the evidence in this case that the water on the floor had dripped there from a container of water and that container of water had been placed on the shelf by an employee of Defendant Munford, Inc. and that the Defendant's employees failed to inspect the container of water for leakage, then the Defendant Munford, Inc. was negligent and your verdict must be for the Plaintiff, Bettie Fleming.

597 So. 2d at 1286. This Court held that the instruction accurately stated the law, and the instruction had an evidentiary basis.

¶51. IMT contends that the refusal to grant instruction P-6 did not constitute reversible error. IMT contends that no assumption of the risk jury instruction was given by the trial court. Therefore, Pickering's requested instruction as to what did constitute assumption of the risk was moot and irrelevant and obviously would have served only to confuse the jury.

¶52. A review of the record does not reveal the actual proposed instruction P-6. However, Pickering provides the following in his brief and IMT does not dispute the wording:

> Ladies and gentlemen of the jury, if you find by a preponderance of the evidence in this case that the Pat Pickering:
>
> (1) But for the fatigue and hurry, would have known that in getting off of the Industrija Masina I Traktora tractor while it was running to attempt to free the clutch from the floorboard of the Industrija Masina I Traktora tractor while the tractor was otherwise in gear and while he was standing in front of the rear wheel of the tractor, he was placing himself in a situation inconsistent with his safety;
>
> (2) That it was the end of his workday, and he was tired and fatigued, and attempting to finish the job he was working on as soon as possible, he did not appreciate the danger; and
>
> (3) He therefore did not deliberately and voluntarily choose to expose himself to a perceived danger,
>
> Then you must find that Pat Pickering, by virtue of that state of mind, did not assume the risk of injury. Then your verdict shall be for Pat Pickering for all damages sustained, and against Industrija Masina I Traktora.

The trial judge refused this proposed instruction because it was argumentative. The general rule promulgated by this Court which dictates instructions to the jury are to be taken collectively rather than be given individual consideration. So long as all the instructions read together adequately and properly instruct the jury on the issues, an individual instruction given to the jury will not constitute reversible error. **Detroit Marine Engineering v. McRee,** 510 So. 2d 462, 467 (Miss.1987); **Garcia v. Coast Electric Power Ass'n,** 493 So. 2d 380 (Miss. 1986); **Miss. Farm Bureau Mutual Ins. Co. v. John W. Todd, et al,** 492 So. 2d 919 (Miss. 1986). The trial judge properly refused proposed jury instruction P-6.

## VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IN LIGHT OF THE FACT THAT THE DEFENDANT WAS SANCTIONED BY THE UNITED STATES.

¶53. Pickering contends that by virtue of the powers granted to the President of the United States under the International Emergency Economic Power Act (IEEPA), 50 U.S.C. § 1701 (1994), President Bush issued Executive Order No. 12808, blocking interests in property owned by the Governments of Serbia and Montenegro. Executive Order No. 12810, 57 Fed. Reg. 23,033 (1992). Subsequently, Executive Order No. 12810, 57 Fed. Reg. 24,437 (1992), and Executive Order No. 12831, 58 Fed. Reg. 5253 (1993), were issued prohibiting trade and other transactions with the Federal Republic of Yugoslavia. These sanctions were expanded by President Clinton blocking "property and interests in property of all commercial, industrial, or public utility undertakings or entities organized or located in the Federal Republic of Yugoslavia (Serbia and Montenegro)..." and prohibiting trade-related dealings by the United States persons involving "United Nations Protected Areas in the Republic of Croatia and those areas of the Republic of Bosnia and Herzegovina controlled by Bosnian Serb forces. Executive Order No. 12846, 58 Fed. Reg. 25,771 (1993).

¶54. Pickering filed a Motion to Strike Defense of Industrija Masina I Traktora (IMT) and Imposition of Default Judgment, which motion was not granted by the lower court. Pickering asserts that IMT as a foreign corporation whose principal place of business is located in Belgrade, Serbia, was subject to those sanctions provided for in Executive Orders 12808, 12810, 12831, and 12846. Pickering argues that it is inconceivable to the import of these Presidential edicts that businesses and the business men and women who represent them can be summarily deported, their assets seized, and their governmental leaders tried for war crimes; yet IMT be allowed to use a Mississippi court to protect the state owned manufacturer of a defective tractor while the other elements of the same Serbian government are punished by the greater sanction of deprivation of liberty. For these reasons Pickering argues that default judgment in his favor should have been entered.

¶55. In his brief, Pickering fails to cite any authority for obtaining a default judgment against IMT. Failure to cite authority in support of claims of error precludes this Court from considering the specific claim on appeal. *R.C. Petroleum, Inc. v. Hernandez,* 555 So. 2d 1017, 1023 (Miss. 1990).

## IX. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION FOR ADDITUR.

¶56. Finally, Pickering argues that the trial court erroneously granted Defendant's Jury Instruction D-9 allowing the jury to reduce the damages awarded by the Pickering's comparative negligence. Specifically, Pickering argues that additur is warranted by the fact that his evidence of fault and damages were unrefuted by the defendant. Pickering relies on the case of *Leach v. Leach*, 597 So. 2d 1295, 1297 for the proposition that each case involving the issue of additur must "necessarily be decided on its own facts." Pickering contends that damages were not disputed by IMT, there was extensive testimony as to the pain and suffering of Pickering resulting from the IMT tractor running over him, Dr. Barrett's deposition was read into evidence in support of the medical bills and as to the permanent nature of Pickering's injuries, and Nat Fentress offered testimony that Pickering had incurred average lost profits of $12,000 for the three years immediately following the accident all of which went unrefuted by IMT. For these reasons Pickering contends that the lower court should have granted the motion for additur.

¶57. IMT contends that whether or not it refuted the testimony of any witness concerning pain and suffering is irrelevant; it is for the jury to determine the amount of damages adequate to compensate the plaintiff. Further, IMT contends that Pickering proffers two grounds for additur, the first is a renewed argument that comparative negligence should not have been applied which has been treated supra, and the second ground for additur was not presented to the trial court in plaintiff's motion and has been waived. IMT relies on the case of ***Lewis v. Hiatt***, 683 So. 2d 937, 940 (Miss. 1996) wherein this Court stated that in reviewing a motion for additur, the Court must view the evidence in the light most favorable to the Defendant.

¶58. In reviewing a trial court's grant or denial of an additur, this Court's standard of review is limited to an abuse of discretion. ***Rodgers v. Pascagoula Pub. Sch. Dist.,*** 611 So.2d 942, 945 (Miss. 1992); ***State Highway Comm'n of Mississippi v. Warren,*** 530 So.2d 704, 707 (Miss. 1988). The party seeking the additur bears the burden of proving his injuries, loss of income, and other damages. We view the evidence in the light most favorable to the defendant, giving him all favorable inferences that may be reasonably drawn therefrom. ***Rodgers,*** 611 So.2d at 945; ***Odom v. Roberts***, 606 So.2d 114 (Miss. 1992); ***Copeland v. City of Jackson***, 548 So.2d 970, 974 (Miss. 1989). Awards set by jury are not merely advisory and generally will not be "set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." ***Rodgers,*** 611 So.2d at 945 (citations omitted). The amount of damages awarded is primarily a question for the jury. ***South Cent. Bell Tel. Co. v. Ellis,*** 491 So.2d 212, 217 (Miss. 1986).

¶59. In the case sub judice, the jury assessed Pickering's damages at $90,600 which was reduced by $40,000 giving IMT credit for the two settling defendants. Further, the jury attributed 75% of the fault to Pickering. Pickering does not contend that the jury award was inadequate. However, he argues that the credit for the two settling defendants and the deduction for comparative fault should not have been allowed. Having disposed of these arguments in the previous issues, this assignment of error is without merit.

## CONCLUSION

¶60. In conclusion, the judgment of the Simpson County Circuit Court is affirmed.

¶61. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY SULLIVAN, P.J. COBB, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING**:

¶62. The majority's opinion is riddled with misinterpretations of the law. Hence, I must dissent. I write to reaffirm my belief that it is wrong to inject negligence principles into an area of liability which is premised on the concept of no fault strict liability.

¶63. The majority cites *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), and *Horton v. American Tobacco Co.,* 667 So. 2d 1289 (Miss. 1995)*,* as the basis for injecting comparative negligence into strict liability. In *Prestage*, the plaintiff proceeded to trial under both strict liability and negligence theories. The plaintiff's damages were reduced by a percentage of fault that the jury had assigned to him; however, we were very careful to note that the plaintiff did not challenge the reduction of his damages on appeal and that this Court was not deciding that comparative negligence was applicable in strict liability cases. *Prestage*, 617 So. 2d at 264 n.8. In *Horton*, the plaintiff requested the comparative negligence instruction over the objections of the defendant. *Horton*, 667 So. 2d at 1292. In neither case was the applicability of comparative negligence to strict liability properly before us; in both instances, the plaintiff's actions precluded us from addressing the propriety of using comparative negligence principles in a strict liability case. The majority's reliance on these two cases is sorely misplaced.

¶64. The majority ignores our precedents going back to 1966 in *State Stove Mfg. Co. v. Hodges*, 189 So. 2d 113 (Miss. 1966), in which we adopted § 402A of the Restatement (Second) of Torts which required only the elements of defect and causation in order to assess damages. On the other hand, in a cause of action alleging negligence, the elements are duty, breach of duty, plus causation equals damages. Where negligence is the cause of action, one examines the negligence of the defendant as well as that of the plaintiff to determine the comparative fault of the parties; damages are assessed based on the percentage of liability of each party. If we commingle comparative negligence in strict liability, are we to compare the negligence of the defendant on the date the defect was manufactured the negligence of the plaintiff on the date he is injured which is usually years later? Furthermore, and even more importantly, since the negligence of the defendant is supplied as a matter of law, how can the jury weigh the negligence of the defendant against that of the plaintiff when the negligence of the defendant is never a consideration?

¶65. As stated in the Restatement (Second) of Torts § 402A, a seller is liable for physical harm to the consumer where he sells a product in a defective condition which is unreasonably dangerous to the consumer. *See Toliver v. General Motors Corp.*, 482 So. 2d 213, 215 (Miss. 1985); *see also State Stove Mfg Co.*, 189 So. 2d at 118 (adopting § 402A). **The plaintiff need not prove negligence; that is supplied as a matter of law.** *Toliver*, 482 So. 2d at 215.

¶66. In *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), we announced that the proper analysis in a products liability case employs the risk-utility test. As the name implies, the test employs a balancing of utility versus risk. *Prestage*, 617 So. 2d at 254. **The focus is on the product, not the consumer.**

¶67. There are seven factors considered in risk-utility analysis:

1) The usefulness and desirability of the product - its utility to the user and to the public as a whole.

2) The safety aspects of the product - the likelihood that it will cause injury, and the probable seriousness of the injury.

3) the availability of a substitute product which would meet the same need and not be as unsafe.

4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

5) The user's ability to avoid danger by the exercise of care in the use of the product.

6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

7) The feasability, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Prestage*, 617 So. 2d at 256 n.3.

¶68. Two of the factors, (5) and (6), take into account some consideration of the user's behavior. Like all of the seven factors, to the extent that a user's behavior is relevant, it is relevant in deciding whether the utility of the product is outweighed by its danger, i.e. liability. However, once the jury has found liability for a defective product, damages are not reduced by the doctrine of comparative negligence. To do so would amount to penalizing the plaintiff by factoring his behavior in twice.

¶69. On the flip side, as stated above, the defendant's negligence is irrelevant. It is supplied as a matter of law. This fact makes a comparison of the negligence of the parties impossible. As noted in Harry R. Levine, *Strict Products Liability and Comparative Negligence: The Collision of Fault and No-Fault,* 14 San Diego L. Rev. 337, 356 (1977): "In essence, we would ask a jury that if they find the defendant's product defective, irrespective of fault, they should reduce the plaintiff's damages by considering the plaintiff's culpability *in proportion* to the defendant's non-culpability. This requirement may be a feat which is beyond the prowess of an American jury." *See id.* (emphasis in original).

¶70. When we adopted § 402A strict-liability for products in *State Stove* in 1966, we did so because there existed good reasons to do so. Imposing strict liability on the manufacturer of a defective product shifts the loss from the consumer to the manufacturer. *Toliver*, 482 So. 2d at 215. The manufacturer is not only in the best position to spread the loss among all consumers, the manufacturer alone has the power to correct defects. *Daly v. General Motors Corp.*, 575 P.2d 1162, 1168 (Cal. 1978).

¶71. Strict liability also has the effect of relieving the plaintiff of the burden of proving the manufacturer negligent. *Toliver*, 482 So. 2d at 215. As noted in *Toliver*, it is often difficult, if not impossible, to prove negligence on the part of the manufacturer. Strict liability "assists the plaintiff who could not, otherwise, satisfy his burden of showing how the product became defective." *Id* at 216**.**

¶72. In addition, the doctrine of strict liability provides an incentive other than the demands of the marketplace for manufacturers to create safer products. Comment, *Comparative Fault and Products Liability: A Dangerous Combination*, 52 Mo. L. Rev. 445, 448 (1987).

¶73. Applying comparative negligence principles to strict liability for manufacturing defective products undermines the very reasons for strict liability. It reduces the incentive of the manufacturer to produce safer products; it also reduces the incentive to develop anti-contributory negligence mechanisms. Aaron D. Twerski, *The Use and Abuse of Comparative Negligence in Products Liability*, 10 Ind. L. Rev. 797, 800 (1977). **See also** *Kimco Dev. Corp. v. Michael D's Carpet Outlets*, 637 A.2d 603, 607 (Pa. 1993) ("The deterrent effect of imposing strict product liability standards would be weakened were we to allow actions based upon it to be defeated, or recoveries reduced by negligence concepts."); *Armstrong v. Cione*, 738 P.2d 79, 83 (Haw. 1987) (barring recovery against manufacturer or distributor by applying

comparative negligence principles would result in inefficient economic incentives to produce safe products and would place a cost for partially unsafe products on the consumer); *Bell v. Jet Wheel Blast*, 462 So. 2d 166, 172 (La. 1985) ("Reduction of the plaintiff's award in this type of case would only tend to defeat the basic goals of strict products liability doctrine by reducing economic incentive for product quality control and by forcing the injured individual to underwrite a loss himself. . . ."); *Lippard v. Houdaille Indus.,* 715 S.W.2d 491, 493 (Mo. 1986) (en banc) ("If the defective product is a legal cause of injury, then even a negligent defendant should be able to recover.").[(2)]

¶74. Comparative negligence principles have no place in a theory of strict liability designed without regard to fault. The negligence of the plaintiff is as irrelevant as that of the defendant. I agree with Justice Mosk who wrote,

> The defective product is comparable to a time bomb ready to explode; it maims its victims indiscriminately, the righteous and the evil, the careful and the careless. Thus, when a faulty design or otherwise defective product is involved, the litigation should not be diverted to consideration of the negligence of the plaintiff. The liability issues are simple: Was the product or its design faulty, did the defendant inject the defective product into the stream of commerce, and did the defect cause the injury? The conduct of the ultimate consumer victim who used the product in the contemplated or foreseeable manner is wholly irrelevant . . . .

*Daly v. General Motors Corp.*, 575 P.2d at 1183-84 (Mosk, J., dissenting).

¶75. As to the damages calculation, this is a strict liability case. No comparative negligence should be considered. In each of the cases of *Estate of Hunter v. General Motors Corp.*, No. 96-CA-01278-SCT, 1999 WL 12908 (Miss. Jan. 14, 1999), *Horton v. American Tobacco Co.*, 667 So. 2d 1289 (Miss. 1995), and *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), **negligence was claimed, or a comparative negligence instruction was requested, by the plaintiff.** Such was not the case here. In fact, during the jury instruction conference, the following colloquy, ignored by the majority, occurred between the court and plaintiff's counsel:

> THE COURT: Is it your argument that this is not a contrib case?
>
> MR. RINGER: (Counsel for Plaintiff Pickering): My argument is this is not a negligence case, I mean, you can't have comparative negligence or contributory negligence when you have no negligence, and the Court will recall that the pleadings were amended by order so that there are no allegations in here unlike this [Sperry-New Holland] case which was a case in which the allegations and the ruling of the court were based upon there having been a complaint that sounded both in tort, strict liability and negligence. This is not a case that sounds whatsoever in negligence and any contributory or comparatively negligence is like it's trying to contribute to a negligence that's never been plead proven or in the case.
>
> . . . .
>
> MR. RINGER: Yes, sir. He plead negligence as a defense to a complaint that initially alleged negligence, but then we amended and the order of Court was that negligence was out of this case. So, there hasn't been any proof on it.
>
> THE COURT: Okay. Show me the order.

MR. POWELL: (Counsel for Defendant IMT): No. He doesn't need to show you the order. I agree there was an order taking negligence out.

. . . .

THE COURT: . . . **I'm going to give it [instruction D-9] just out of abundance for precaution, but** *if I was defending, I wouldn't want it.*

(emphasis added). The language to which counsel and the judge referred is found in the circuit court's order of April 15, 1995:

7. Plaintiff amends its Complaint, such that it only seeks to recover on causes of action for which the Defendants may be found strictly or absolutely liable; . . .

The judge explicitly limited this case to strict or absolute liability. This case is devoid of any consideration of negligence. There is no need nor means to speak of such in this case. This is not a comparative negligence case. The judge admitted he gave the comparative negligence instruction out of an "abundance of precaution." He even stated he would not want the instruction if he were defense counsel. He was wise in stating he would not want the instruction, because it should be reversible error. The jury should not have been advised about comparative negligence nor given a verdict form on which they could apportion fault by which their damages award could be reduced. Counsel objected not only to the instruction D-9 on comparative negligence, but also to the Form of the Verdict:

THE COURT: David [Ringer-Pickering's counsel], I'm assuming you are objection to this in its entirety and every individual part thereof.

MR. RINGER: Well, that's true, Judge, . . .

¶76. Yet, while it is obvious the damages should not have been reduced under a comparative negligence scheme, the settlements also should not have used to reduce damages. The majority does not diligently apply the law when it affirms the trial court's reduction of damages. The majority faithfully cites *Whittley v. City of Meridian*, 530 So. 2d 1341 (Miss. 1988), as governing in this case. While the procedures propounded in *Whittley* and reiterated by the majority are important, neither is at issue here. Procedure 1 requires the jury be informed of a settlement, no such statement was made. While, the clerk-not a party hereto and despite the pre-trial settlements-erroneously announced as the case as "Pat Pickering v. IMT, a Foreign Corporation, and Garner Ford Tractor Company, a Mississippi Corporation." The Court corrected the Clerk by stating: "Ladies and gentlemen, we are starting the trial of a civil case styled Pat Pickering versus IMT, a Foreign Corporation." The jury was unaware of the settlement situation; they heard the correction of a simple error. The majority admits that no *Whittley* instruction was given. Indeed, the majority admits that the jury was not informed of the settlement. Procedure 1 is not at issue. As to Procedure 2, it requires a stipulation, outside the jury's presence, of which the majority admits there is no evidence in the record. Hence, *Whittley* is inapplicable.

¶77. When considering the issue of settlements, it is also wise-despite the majority's failure to do so-to consider the seminal case of *McBride v. Chevron U.S.A.*, 673 So. 2d 372 (Miss. 1996), in which we adopted the settlement-first method, which was used in this case. However, *McBride* involved a settlement mid-trial whereas the instant case involved a pre-trial settlement. *See id.* at 375. Further, *McBride* itself

states that "[t]his opinion is limited, however, to cases in which, as here, the trial court instructed the jury to consider only the relative culpabilities of the plaintiff and the non-settling defendant(s) in apportioning fault under comparative negligence principles." *See id.* at 380. Hence, *McBride* is inapplicable here. This is neither a case of settlement during trial nor, as aforementioned, a case of comparative negligence. Nonetheless, there is language in *McBride* from which this Court should find directive. We stated that if there was any alleged windfall, the plaintiff deserved the damages in light of "the view of this Court that a defendant whose negligence has been found to have proximately caused injury to another person should not be allowed to escape liability for his negligence by the fortuity that a co-defendant has settled prior to trial." *See McBride*, 673 So. 2d at 380. In an effort to promote judicial economy, we strive to encourage settlements. The recalcitrant defendant who chooses not to settle, should suffer upon disposition of the case. Given *McBride*'s language regarding windfalls, it is obvious the settlement-first should not have been applied here when one considers *McBride* in light of *Ford Motor Co. v. Matthews*, 291 So. 2d 169 (Miss. 1974). In *Matthews*, another products liability case, we granted the plaintiff the damages assessed by the trial court without touching the settlement. The plaintiff received all of the money at issue-both the settlement amount and the trial court's award. *See id.* at 170-71 & 177. Further, as explained above, we specifically limited *McBride* settlement-first to cases involving culpability. *See McBride*, 673 So. 2d at 380-81. This is not a case of culpability. This is a case of strict liability. It is obvious that the law of damages requires we allow the plaintiff to fully recover as per *Matthews*. I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION IN PART.**

1. The Fifth Circuit in *Krieser* noted that this Court explicitly reserved judgment on this issue in Estate of *Hunter v. GMC*, 96-CA-01278-SCT, 1999 WL 12908 (Jan. 14, 1999).

2. *Bell* and *Lippard* have been superseded by statute.